# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LELAND W. MCKEE,**

        **Plaintiff,**

**-vs-**           **Case No. 6:07-cv-1554-Orl-28KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motion:

> **MOTION:**    **UNOPPOSED PETITION FOR ATTORNEY'S FEES UNDER 42 U.S.C. 406(b) (Doc. No. 25)**
>
> **FILED:**    September 17, 2008
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

Bradley K. Boyd, Esq., counsel for Plaintiff Leland McKee petitions for an application for attorney's fees pursuant to 42 U.S.C. § 406(b). Doc. No. 25.

## I. PROCEDURAL HISTORY.

McKee filed two applications for social security disability and supplemental security income (SSI) benefits before the Social Security Administration (SSA). The first application was initially denied. McKee filed a request for review of that decision, which was denied by the Appeals Council. The second application was approved, and McKee was awarded benefits. McKee sought review in

this Court of the Commissioner's decision not to reopen the first application as part of the award of benefits. *See* Doc. No. 12 at 1-2.

The Commissioner moved to dismiss the complaint for lack of jurisdiction, alleging that McKee failed to exhaust his administrative remedies regarding the first application. Doc. No. 9. After reviewing McKee's response to the motion, the Commissioner withdrew the motion to dismiss. Doc. No. 13. In its place, the Commissioner filed a motion for remand in which the Commissioner agreed to reopen the first application and issue a fully favorable decision on that application. Doc. No. 15. The Commissioner's motion for remand was granted, Doc. No. 16, and judgment was entered in favor of McKee, Doc. No. 17.

McKee then filed a petition for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Doc. No. 18. That motion was granted, and McKee was awarded $3,165.78 in attorney's fees. Doc. No. 21.

On remand, the Commissioner determined that McKee and his two dependant children were entitled to receive disability and SSI benefits, including past due benefits. Doc. Nos. 25-2, 25-3, 25-4. On August 28, 2008, the Commissioner issued Notices of Award advising McKee and each of his two dependant children of this determination. *Id*. McKee then filed the present motion for attorney's fees pursuant to § 406(b). Doc. No. 25.

Boyd represented McKee in the administrative proceedings and before this Court pursuant to a contingent fee agreement that provides for an attorney's fee award of 25% of any past-due benefits awarded. Doc. No. 25-5. Boyd avers that McKee was awarded $90,623.00 in past-due benefits. Doc. No. 25-7 (Boyd Aff.). In his petition, Boyd also states that the SSA withheld $15,256.50 from

McKee's past due benefits and $3,805.75 for each of his two children for payment of attorney's fees. Doc. No. 25 ¶ 1.

Boyd now requests that the Court award to him additional fees pursuant to § 406(b) in the amount of $20,768.00. Boyd represents that he will refund to McKee the $3,165.78 received under the EAJA. Doc. No. 25 ¶ 6.[1] The Commissioner does not object to the relief requested. *Id.* ¶ 9.

This matter is before me pursuant to the consent of the parties. Doc. Nos. 10, 11.

**II.  ANALYSIS.**

*A.  Award of Fees Under § 406(b) Generally.*

Boyd seeks attorney's fees pursuant to § 406(b)[2], which provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . .

The statute further provides that it is unlawful for an attorney to charge, demand, receive or collect for services rendered in connection with proceedings before a court any amount in excess of that allowed by the court . *Id*. § 406(b)(2). Accordingly, to receive a fee under this statute, an

---

[1] When attorney's fees are awarded under both § 406(b) and the EAJA, a social security claimant's attorney must "'refun[d] to the claimant the amount of the smaller fee.'" *Bergen v. Comm'r*, 454 F.3d 1273, 1277 (11th Cir. 2006)(quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002)).

[2] The payment of fees in SSI cases is governed by 42 U.S.C. § 1383(d). Originally, only § 406(a), which governs payment of fees for work performed at the administrative level, was incorporated into § 1383(d). Section 406(b), which governs payment of fees for work performed before the court, was not. *See Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). However, in the Social Security Protection Act of 2004 ("SSPA"), Pub. L. No. 108-203, Congress incorporated all of § 406 into § 1383(d). Pub. L. No. 108-203, sec. 302(a).

attorney must seek court approval of the proposed fee, even if there is a fee agreement between the attorney and the client.

In *Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1277 (11th Cir. 2006), the United States Court of Appeals for the Eleventh Circuit held that § 406(b) "authorizes an award of attorney's fees where the district court remands the case to the Commissioner of Social Security for further proceedings, and the Commissioner on remand awards the claimant past-due benefits." Because McKee was awarded past-due benefits following remand, the Court may authorize an award of attorney's fees under § 406(b).

  *B.*  *Timeliness of the Petition*.

The first question is whether the present petition is timely. An application for fees under § 406(b) must be brought within the time provided by Federal Rule of Civil Procedure 54(d)(2), which requires filing a motion for attorney's fees within fourteen days "after entry of judgment." *Bergen*, 454 F.3d at 1277. In *Bergen,* the Eleventh Circuit declined to address when judgment is considered entered for purposes of a post-remand award of benefits. *Id*. The court stated that "[b]ecause the Commissioner has not objected to the timeliness of the attorney's fees petitions, we do not address this issue in this case and merely hold that the petitions were timely." *Id*. at 1277-78.

Of course, the Commissioner has no incentive to object to motions that were not timely filed; the Commissioner only wishes to be told to whom the SSA should pay past-due benefits that have been awarded. A plaintiff similarly will not often object because the plaintiff is represented by counsel and thus cannot ordinarily be heard in *pro per*. Nevertheless, the Eleventh Circuit having held that the petitions filed more than fourteen days after the decision on remand was issued should

be considered absent objection, this Court is bound to follow the decision. No objection having been made to the timeliness of the present petition, I will treat it as timely filed.

       *C.      Reasonableness of Contingent Fee Awards Under § 406(b).*

The next question the Court must resolve is whether the requested fee is reasonable. *See Gisbrecht*, 535 U.S. at 807. The burden is on counsel for the successful claimant to show that the fee sought is reasonable for the services rendered. *Id.* "[T]he court may require the claimant's attorney to submit . . . a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.* at 808. The Court observed that the contingent fee may be reduced when the fee is not commensurate with "the character of the representation and the results . . . achieved" or when the past-due benefits "are large in comparison to the amount of time counsel spent on the case. . . ." *Id.*

Boyd cites cases from other divisions in this district that alternately support and reject the full award of contingent fees under § 406(b). In decisions rejecting a full award, judges in this Court have reduced a contingent fee on the basis that the award constituted a "windfall" and cited *Ellick v. Barnhart*, 445 F. Supp. 2d 1166 (C.D. Cal. 2006), as persuasive authority for its ruling. *E.g.*, *Kruse v. Astrue*, No. 5:03-CV-11 (M.D. Fla. Jun. 27, 2007); *Ugorek v. Astrue*, No. 3:04-CV-1119, 2008 WL 169737 (M.D. Fla. Jan. 17, 2008); *Pearce v. Astrue*, No. 3:05-CV-217, 2008 WL 179022 (M.D. Fla. Jan. 17, 2008); *Davis v. Astrue*, No. 3:00-CV-401, 2007 WL 4867573 (M.D. Fla. Jul. 31, 2007); *Jones v. Astrue*, No. 3:01-CV-95, 2007 WL 4867574 (M.D. Fla. Jul. 30, 2007). The district court in *Ellick* relied on its interpretation of *Gisbrecht* and a lack of uniformity and guidance on determining the "reasonableness" of contingency fee awards in § 406(b) cases. *Ellick*, 445 F. Supp. 2d at 1172.

The *Ellick* court engaged in a significant analysis of reported decisions post-*Gisbrecht* that applied *Gisbrecht*'s analysis to contingency fee awards. *Id.* at 1168-71. Noting that "[d]oubtlessly, most decisions applying *Gisbrecht* are unreported," *id.* at 1172, the court found "slightly more than half" of the reported cases at the time used a traditional, pre-*Gisbrecht* lodestar analysis in determining the reasonableness of a contingency fee award that fell under the 25% statutory limit in § 406(b). *Id.* However, the *Ellick* court noted the stated justifications in many of the cases varied widely and of the 43 reported cases at the time, none evinced a "uniform rule of law." *Id.* at 1168.

Prior to *Gisbrecht*, several circuits--including the Ninth Circuit--engaged in a simple lodestar analysis to determine the § 406(b) fee for an attorney who represented a successful plaintiff. As with other lodestar determinations, *see Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth.*, 836 F.2d 1292, 1303 (11th Cir. 1988), the court would simply multiply the reasonable number of hours expended by a reasonable hourly rate to arrive at a lodestar fee, which it could then increase or decrease by any significant contingencies in the case. *See, e.g., Allen v. Shalala*, 48 F.3d 456, 458-459 (9th Cir. 1995). In *Gisbrecht*, the Supreme Court rejected this use of the lodestar method in the Ninth Circuit and elsewhere when the attorney based fees claimed under § 406(b) were based on a contingency fee agreement between the attorney and the claimant. *See Gisbrecht*, 535 U.S. 789, 795-805.

While *Gisbrecht* reaffirmed the lodestar approach for fee shifting statutes, the Court explicitly rejected the use of that method under § 406(b), largely because of Congressional intent. *Id.* While acknowledging that attorneys can and did abuse contingency fees from time to time such that court review was warranted, the *Gisbrecht* Court held that Congress had taken steps to address these problems under § 406, both in the 1965 Social Security Act and later amendments. *Id.* For example,

Congress placed limits on abusive or unreasonable contingency fees by capping the fee at 25% of past due benefits, providing that no other fees would be payable, and attaching serious criminal penalties to violations by attorneys representing claimants under the Social Security Act. *Id.* The Court further noted that in 1990, Congress strengthened contingency fee awards under § 406 by authorizing the SSA to acknowledge contingency fees when awarding fees for agency-level representation. *Id.*

Most importantly, the Court observed that while § 406(b) contains provisions that govern the total fees counsel for a successful claimant may receive for court-related services apart from any contingency fee arrangement, it did not believe the statute "displace[s] contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court." *Id.* The Court sent a clear signal about Congressional intent and the importance of contingent fee arrangements in these cases:

> [V]irtually every attorney representing Title II disability claimants includes in his/her retainer agreement a provision calling for a fee equal to 25% of the past-due benefits awarded by the courts. . . . Given the prevalence of contingent-fee agreements between attorneys and Social Security claimants, it is unlikely that Congress, simply by prescribing "reasonable fees," meant to outlaw, rather than to contain, such agreements. . . . [A] review [mandated by Congress] led the [SSA] to inform Congress that, although the contingency method was hardly flawless, the agency could "identify no more effective means of ensuring claimant access to attorney representation."

*Id.* at 803-05 (internal citations omitted). The Court even highlighted the "telling contrast" between fees under § 406(b) and the far more limited EAJA. *Id.* at 807 n.16. Despite reminding courts to test contingent fee agreements for reasonableness, *id.* at 808 (discussing the concept of "windfalls"), the Court's exhaustive treatment of Congressional intent and the necessity of contingent fee arrangements in these cases militates against using the lodestar approach under a rubric of *Gisbrecht* reasonableness. *See also Bergen*, 454 F.3d at 1275-76 (rejecting rigid, narrow interpretations of § 406).

While avoidance of a windfall is a valid basis for a downward departure in fees awarded under § 406, *Gisbrecht*, 535 U.S. at 806-07, re-adopting the lodestar approach would likely have a chilling effect on the willingness of attorneys to undertake contingent fee representation in these cases. *Gisbrecht*'s importance lies in its clear holding that plaintiffs may viably and validly secure representation in Social Security benefits cases through contingent fee arrangements.  In general, I find support for substantial, yet reasonable, contingent fees in light of Congressional intent, Supreme Court precedent, and Eleventh Circuit guidance.

While it has yet to rule on this exact issue, the Eleventh Circuit has signaled that courts in this circuit should not adopt literal readings of § 406(b), and by extension narrow readings of *Gisbrecht*, that would frustrate Congressional intent.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1275-76 (11th Cir. 2006)(citing *Shoemaker v. Bowen*, 853 F.2d 858, 861 (11th Cir. 1988)).  Literal readings that would serve to expressly re-inject the pre-*Gisbrecht* lodestar analysis into § 406 contingency fee determinations would run counter to clear Congressional intent in adopting and amending § 406, overlook the spirit of the Supreme Court's ruling in *Gisbrecht*, and contravene the Eleventh Circuit's guidance in *Bergen*.

The question of "reasonableness" should not be, as the *Ellick* court found, one of whether a contingent fee is reasonable if converted to an hourly rate. Unlike hourly rates in a given legal market, contingent fee systems rely on expected values: the projected award of fees discounted by the probability of obtaining an award and the often extensive delay before a final determination is made on a claim. This "expected value" analysis is absent from hourly fee calculations.

For Social Security benefits cases, the discount for the low probability of success is substantial. For the Court to hear his case, Plaintiff McKee first had to *lose* four times: during his

-8-

initial application to the SSA, again on reconsideration of that application, a third time at a hearing before an administrative law judge, and finally before the SSA's Appeals Council. Even once McKee finally reached this Court, he faced an extremely deferential standard. In cases where a district court reviews a decision issued by the SSA, the court must affirm the SSA's decision if it is supported by substantial evidence, even if the court finds that the proof preponderates against the decision. *Dyer v. Barnhard*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court may not reweigh the evidence or substitute its own judgment. *Id.*

For all of the foregoing reasons, courts should not convert contingent fee awards into hourly rate "equivalents" and apply standard lodestar approaches. Rather, I concur with the analysis in *Yarnevic v. Apfel*, 359 F. Supp. 2d 1363 (N.D. Ga. 2005). In that case, the court established the following standard for review of the reasonableness of a contingent fee under § 406(b):

> In determining whether a fee sought under § 406(b) is reasonable, the Court should look first to the contingent fee agreement and should then consider, *inter alia*, the character of the attorney's representation and the results achieve. The Court may also consider the hours the attorney spent representing the claimant before the Court and the attorney's normal hourly billing rate for non-contingent fee cases, but this data does not control the Court's determination of the requested fee's overall reasonableness.

*Id.* at 1363 (citing *Gisbrecht*).

### D. *Application of § 406(b) and Case Law.*

I find that Boyd has established the reasonableness of his contingency fee under this analysis. In support of his argument that the fees he seeks are reasonable, Boyd presented the contingent-fee agreement signed by McKee, an affidavit and a timesheet reflecting the hours he and his co-counsel worked in the case. Doc. Nos. 25-5 (Fee Agreement), 25-6 (Timesheet), 25-7 (Boyd Aff.), 25-8 (Rush Aff.). The Fee Agreement limits the fees Boyd may recover to 25% of any past-due benefits awarded, although it permits attorney's fees that exceed 25% of past-due benefits to the extent that the Court requires the government to pay a portion of the attorney's fees. Boyd correctly concedes, however, that he must refund to McKee the EAJA fee he received. Thus, I conclude that the Fee Agreement as applied limits the attorney's fee Boyd can recover to a total of 25% of the past-due benefits awarded. The requested fee award, $20,768.00, is less than the $22,655.75 that represents 25% of the past-due benefits awarded to McKee and his dependants. Doc. No. 25, at 2.

My review of the file reflects that this was initially a contested matter before this Court. The Commissioner initially filed a Motion to Dismiss or for Summary Judgment, Doc. No. 9, requiring Boyd spend 3.5 hours preparing a response, Timesheet (Entry of 4/18/2008), Doc. No. 12, before the Commissioner filed a Motion for Remand so the SSA could award McKee benefits. Doc. Nos. 13-16. As a result of Boyd's work, McKee was successful on remand of his claim for further consideration.

Further, the Fee Agreement reflects that McKee was cognizant that the attorney's fee he was agreeing to pay Boyd "could amount to several hundred dollars per hour on an hourly basis" but that he was "satisfied that this is a fair fee agreement" based on his knowledge of legal fees in the community. Fee Agreement ¶ III. In support of his contention that the requested fee is reasonable, Boyd avers that he is an attorney who has represented claimants before the SSA since 1993, Boyd Aff.

¶¶ 1, 4, and his co-counsel Krista Rush avers she has represented claimants before the SSA since 2001. Rush Aff. ¶¶ 1, 4.³ The Timesheet shows that Boyd and Rush collectively worked 18.88 hours on this case. *See* Timesheet.

A full contingent-fee award of $20,768.00, reduced by $3,165.78 in EAJA fees, is not unreasonable in light of the 25% statutory limit, contingent fee agreements in the Orlando legal market, and contingent fee agreements permitted in other cases. *See Yarnevic*, 359 F. Supp. 2d at 1365-66 (citing contingent fee awards). Applying the foregoing general principles to this case, such an award would not constitute a windfall to Plaintiff's counsel.

Undoubtedly, Boyd achieved significant success for McKee. Boyd has considerable experience in the field and, by his own count, has over 300 currently active Social Security cases. Additionally, because his claim was denied four times before he filed his case in this Court, McKee would have been wholly unsuccessful without these judicial proceedings. Because Boyd undertook representation on a contingent basis, I also must account for Boyd's significant risk that he would not win an award for his client and thus would not be paid at all. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Under these circumstances, I conclude that the requested attorney's fee is reasonable.

---

³ Boyd attests that his normal hourly rate for Social Security matters is $168.58 per hour. *See* Timesheet. I note that conducting an *Ellick*-style lodestar analysis based on statutorily-limited hourly rates would even further unfairly penalize counsel, since but for statutory limits, he could command far higher market rates commensurate with his experience.

### III. CONCLUSION.

Accordingly, it is **ORDERED** that Bradley K. Boyd, Esq., is authorized to charge and collect from McKee the sum of $20,768.00. Simultaneously, Boyd shall refund to McKee the $3,165.78 he received as an EAJA fee. It is further **ORDERED** that Boyd shall promptly provide a copy of this Order to McKee. If McKee objects to the award of attorney's fees, he may file an objection with this Court on or before October 10, 2008.

**DONE** and **ORDERED** in Orlando, Florida on September 30, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE